**20TH CENTURY WEAR, INC., Appellant,**

v.

**SANMARK–STARDUST INC. and Domino Industries, Inc., Appellees.**

**No. 509, Docket 86–7738.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1986.

Decided March 24, 1987.

Leonard W. Wagman, New York City (Golenbock and Barell, Leonard A. Benowich, Kathy S. Marks, of counsel), for appellant.

Howard C. Miskin, New York City (Colvin Miskin Basseches & Mandelbaum, Howard F. Mandelbaum, of counsel), for appellees.

Before OAKES, CARDAMONE and DAVIS *, Circuit Judges.

OAKES, Circuit Judge:

This case involves a claim by 20th Century Wear, Inc. ("20th Century") that Sanmark-Stardust Inc. ("Sanmark"), an importer and wholesaler of women's sleepwear, and Domino Industries, Inc. ("Domino"), Sanmark's sales agent, infringed 20th Century's trademark and trade dress in connection with the sale of women's flannel pajamas and nightgowns. This is the second time we have had this case on appeal. The first appeal reviewed a judgment granting 20th Century damages, attorneys' fees, and a permanent injunction against further infringement of 20th Century's registered trademark—"Cozy Warm ENERGY–SAVERS." In *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81 (2d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985), we reversed and remanded for further findings in regard to the protection of the registered trademark and to Sanmark's liability under New York state unfair competition law. In particular, we held that "Cozy Warm ENERGY–SAVERS" was a descriptive rather than a suggestive mark and remanded for a determination whether the mark had acquired secondary meaning. With respect to the state law trade dress claim, we re-

* Of the United States Court of Appeals for the

manded, first, for a determination whether under New York law a finding of secondary meaning is an essential prerequisite of liability, noting that it appeared that it may not be, 747 F.2d at 92 n. 16, and, second, for determinations whether proof of actual confusion is required in order to obtain a damages remedy under New York law and, if so, whether such confusion did occur.

On remand, the United States District Court for the Southern District of New York, Robert L. Carter, Judge, held that no trademark infringement had been proved. Because 20th Century failed to show that the consuming public associated 20th Century with the trademark "Cozy Warm ENERGY–SAVERS," the court concluded that secondary meaning had not been established. As to the trade dress claim, the district court noted that it had originally found deliberate copying by Sanmark of 20th Century's unique trade dress, but that this finding had been "fatally undercut" by evidence at the remand hearing and in a deposition of Sanmark's president. The court credited the testimony of Mr. Sam Russo at the remand hearing that since 1950 or 1951 transparent bags had been used to package his "Ideal Lady" sleepwear products, and that a number of other sleepwear manufacturers had also packaged their products in this way (some using inserts, some not; some using hang tags, some not). The court thus found that 20th Century's trade dress was not unique but rather was the norm for the industry. In connection with its original finding that Sanmark had copied 20th Century's trade dress, the district court now found that Russo's evidence supported and made believable the testimony of Sanmark's president, Abraham David, that he had simply asked his Far Eastern manufacturer to use a type of packaging similar to that in use by the industry at the time.

On appeal, 20th Century argues, first, that the district court's conclusion that its trademark had not acquired secondary meaning was reversible error in light of several factors—20th Century's exclusive

Federal Circuit, sitting by designation.

use of the mark for four years, its $14 million worth of sales over that period, its advertising, the fact that third parties recognized the mark, and, additionally, Sanmark's alleged intentional copying of the mark. 20th Century argues, second, that the district court's conclusion that Sanmark did not intentionally copy its trademark and trade dress was clearly erroneous and, third, that 20th Century is entitled to relief for trade dress infringement under New York unfair competition law, which does not require proof of secondary meaning. We reject these arguments and affirm the decision below.

## DISCUSSION

### 1. *Trademark Infringement*

Judge Charles Metzner put it very well when he said that "[t]he crux of the secondary meaning doctrine is that the mark comes to identify not only the goods but the source of those goods." *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 133 (S.D.N.Y.1972). He went on to say that "[t]o establish secondary meaning it must be shown that the *primary* significance of the term in the minds of the consuming public is not the product but the producer," adding that "[t]his may be an anonymous producer, since consumers often buy goods without knowing the personal identity or actual name of the manufacturer," but that "it must be demonstrated that the purchasing public associates goods designated by the particular word or words in question with but a single, though anonymous, source." *Id. See also In re DC Comics, Inc.*, 689 F.2d 1042, 1054 (C.C.P.A.1982) (Nies, J., concurring); *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 333–34 (2d Cir.1983).

As we noted in the earlier appeal, quoting Judge Metzner, " 'proof of secondary meaning entails rigorous evidentiary requirements,' " 747 F.2d at 90 (quoting *Ralston Purina Co.*, 341 F.Supp. at 134). We

stated that a party seeking to prove secondary meaning has a "heavy burden," and that evidence of consumer studies, *see Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1340–41 (2d Cir.1975), or successful advertising, *see McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1133 n. 4 (2d Cir.1979), would be helpful in showing that the purchasing public associated the phrase "Cozy Warm ENERGY–SAVERS" with 20th Century's goods. 747 F.2d at 90.[1] A finding that Sanmark had intentionally copied 20th Century's mark could also be persuasive, if not conclusive, evidence of consumer recognition and good will, *see LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir. 1979); *cf. Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980) (deliberate copying was evidence of confusing similarity).

Here, there was no testimony at trial or on remand from customers, nor any evidence as to consumer surveys, though two buyers testified that they recognized the phrase "Cozy Warm ENERGY–SAVERS" as identifying 20th Century products. Other than hang tags from the plastic bags, the only advertising that was in evidence was the distribution of some 800 brochures to wholesale buyers in the trade in 1981 and later years. We believe that this record falls short of establishing secondary meaning.

In addition, we see no reason to disturb the district court's finding on remand that there was no intentional copying of 20th Century's trade dress. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985) (discussing "clearly erroneous" standard of review). The district court relied upon testimony of Sam Russo to find that packaging in a plastic bag, with hang tags and other information including inserts

---

**1.** Sanmark has argued that 20th Century is barred as a matter of law from asserting secondary meaning since prior to 1981 it marketed part of its imported sleepwear products in its usual packaging but under private label. 20th

Century did, however, use the "Cozy Warm EN-ERGY–SAVERS" tag with its own label from 1977 for a period of four years up to the time of Sanmark's alleged infringement.

with photographs or sketches of models, was the industry norm. Trial exhibit DDD, for instance, shows a package of Radlee pajamas that includes as an insert a drawing of a woman in pajamas with her hands on her hips, much like the models pictured in the 20th Century and Sanmark packages. Furthermore, the use of the cotton-ball hang tag is available to anyone in the industry from Cotton Incorporated, a trade association that promotes the use of cotton; 20th Century has no proprietary interest in it.

We are left, then, with the "Cozy Warm ENERGY–SAVERS" hang tag, a basket in which 20th Century must have all its eggs. Upon registration, 20th Century disclaimed the exclusive use of "Cozy" and "Warm" apart from the mark as registered, so it cannot rely simply on the fact that Sanmark used those two words. Indeed, the record contains numerous advertisements and tags in which those words have been used in relation to sleepwear, and Sanmark itself had used them, according to the unrefuted testimony of its president, off and on for twenty years. Thus, "ENERGY–SAVERS" is the critical term on which 20th Century must rely. Yet, starting with the energy crisis in 1973, there was evidence in the record of any number of people using this language to describe clothing and numerous other products. Our record includes, for example, advertisements or tags for drapery featuring "energy saver thermal insulation," "the energy saving sweater," and "an energy saving" bedwarmer and mattress pad. In addition, Sanmark itself did not use the words "energy savers," but instead used the phrase "CONSERVES–ENERGY," though admittedly this phrase as printed resembles 20th Century's "ENERGY–SAVERS" in its use of a hyphen, block letters, and underline.

20th Century argues that Mr. David had seen 20th Century's packaging and that his use of similar packaging therefore created an inference of copying. But even if we assume that there was copying, the evidence shows that what was actually copied was packaging that had been in use in the trade together with a descriptive and functional phrase. We are therefore con-

strained under *Anderson, supra,* to hold that Judge Carter's finding that the mark acquired no secondary meaning was not clearly erroneous.

2. *Trade Dress Infringement*

■ In respect to the New York trade dress claim, we held in *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d at 952–53, that proof of secondary meaning is not necessary under New York law in order to to obtain relief from an infringing trade dress. Rather, New York law focuses on whether the public is likely to be confused by the similar trade dress. *Id.* Absent proof of intentional copying, *see id.* at 954 (confusing similarity presumed where intentional copying shown), we must look to other evidence of the likelihood of public confusion. Here, the only evidence of confusion in the record is the testimony of a few buyers or employees of 20th Century. We find this evidence insufficient, however, in light of the additional requirement of New York law that a trade dress be "distinctive" in order to be protected. *Id.; Polo Fashions, Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555, 559 (S.D. N.Y.1978). For the reasons previously stated, however, we conclude that 20th Century's trade dress is neither memorable nor distinctive. *Cf. Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976) ("descriptive" use of "SAFARI" for boots in connection with booking African safaris with the purchase of clothing held to be a fair use).

Judgment affirmed.