**PLAYSKOOL, INC., Plaintiff,**

v.

**PRODUCT DEVELOPMENT GROUP, INC. and William J. Weber, Defendants.**

**No. 88 C 3278.**

United States District Court, E.D. New York.

Nov. 17, 1988.

---

Morrison & Foerster (Kim J. Landsman, of counsel), New York City, for plaintiff.

Reboul, MacMurray, Hewitt, Maynard & Kristol (J. Joseph Bainton, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a manufacturer of toys for preschool children, brought this action against defendant Product Development Group, Inc. and defendant Weber, its controlling stockholder and principal officer (herein collectively "defendant"), for trademark infringement, unfair competition, false advertising and related claims under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (1982), and New York statutory and common law. The complaint alleges that defendant's design and advertising of its children's construction set called "Structures" infringes plaintiff's trademarks "Playskool" and "Pipeworks" as well as its trade dress. Plaintiff also alleges that defendant has falsely advertised that the "Structures" system can be used in conjunction with plaintiff's "Pipeworks."

Plaintiff moved for a preliminary injunction and expedited discovery by order to show cause. Specifically plaintiff seeks an order (1) preventing defendant from using plaintiff's trademarks in its advertisements or packaging, selling its product with the existing colors or packaging, and claiming that the product can be used in conjunction with plaintiff's product, and (2) recalling all of defendant's product not yet sold to customers. Defendant moves to consolidate the trial on the merits with the hearing on the preliminary injunction pursuant to Fed. R.Civ.P. 65(a)(2).

### I.

Plaintiff sells toys for preschool children using the the "Playskool" trademark. The trademark was first used in commerce in 1927, and since September 23, 1969 plaintiff has owned a registered trademark for that word. Beginning in 1973, the trademark has been displayed in plaintiff's advertising, packaging and products in a logo consisting of the word in white letters in a child-like typeface against a red, rectangular background with rounded corners. Plaintiff has owned a registered trademark for this logo since April 19, 1983.

Plaintiff began marketing its "Pipeworks" construction system for children in August 1986 and has owned a registered trademark for that word since June 2, 1987. The "Pipeworks" system is a line of construction sets with which children or their parents can build various types of structures to play on and with. The system consists of long, medium and short straight plastic tubes, curved plastic tubes, plastic connectors, wheels, panels and other accessories.

In the "Pipeworks" system tubes are white and the different connectors are color-coded in bright colors, such as blue, green, red and yellow. An important safety feature of the product is the "click-lock" system for attaching the connectors and the tubes. Each tube has two holes on opposite sides, and each connector has four protrusions or "nubbins." When a connector sleeve is inserted into a tube and twisted, two of the protrusions insert into the tube holes and thereby "lock" the connector and tube together. The locking mechanism is designed so that young children can easily join and lock the various pieces together but can only take the pieces apart with some effort by using a special tool accompanying the product.

Plaintiff packages "Pipeworks" in trade dress featuring red, blue and yellow graphics against a white background. The packaging prominently displays photographs of children using the product. A blue banner runs across the top of the package with the "Playskool" logo in the upper left and the "Pipeworks" trademark in yellow letters immediately below the logo.

Defendant began marketing its "Structures" construction system for children in February 1988. The system consists of long and short straight plastic tubes, various plastic connectors and other accessories. The "Structures" straight tubes are

white and the different connectors are colored blue, yellow and red. In the "Structures" locking system, connectors have four holes but no protrusions or "nubbins." Instead special retainer clips must be attached to the tubes in order to lock the tubes to connectors.

The packaging of defendant's product consists largely of red, yellow and blue graphics against a white background. The "Structures" box displays photographs of children playing with various toys made with the system's components. The "Structures" name runs across the top of the packaging and a red rectangular box containing the words "Building Pipes for little people" runs across the remaining two-thirds of the package's top. Beneath this red rectangle the words "Attaches to Playskool Pipeworks* " are displayed. A footnote in fine print at the bottom of the box states: " 'Pipeworks' is a registered trademark of Playskool, Inc. A subsidiary of Hasbro, Inc."

## II.

The complaint alleges four violations of the Lanham Act: (1) the claim "Attaches to Playskool Pipeworks* " is false advertising, (2) the use of the trademarks "Playskool" and "Pipeworks" constitutes trademark infringement, (3) the design of defendant's packaging constitutes trade dress infringement and (4) the color scheme of defendant's product constitutes trade dress infringement.

A preliminary injunction may issue in a trademark case when the moving party demonstrates "both possible irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping in the movant's favor." *Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1320 (2d Cir.1987).

### (a) false advertising

■ The Lanham Act prohibits not only advertising statements that are literally false, but also statements that tend to deceive or that create a false impression. 15 U.S.C. § 1125(a) (1982); *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978). When an advertising or merchandising statement is literally or explicitly false in the context in which it is made, *Avis Rent A Car System, Inc. v. Hertz Corp.*, 782 F.2d 381, 386 (2d Cir.1986), the court may grant relief without reference to the advertisement's impact on the buying public. *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir.1982).

However, a plaintiff claiming that an advertisement, though literally true, tends to confuse or deceive consumers must, in order to establish a violation of the Lanham Act, present evidence showing what message the consumer will take from the advertisement. *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 525 (S.D.N.Y.1980). As that case noted: "Though the Court's *own* reaction to the advertisement is not determinative, as finder of fact it is obliged to judge for itself whether the evidence or record establishes that *others* are likely to to be misled or confused." *Id.* at 525 (emphasis in original); *see also American Home Products Corp. v. Johnson & Johnson*, 654 F.Supp. 568, 590 (S.D.N.Y.1987).

Where the plaintiff shows false or misleading advertising in violation of the Lanham Act, the court will presume irreparable harm, *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988); where the false or misleading advertising claims could result in physical harm to the consuming public, that presumption is particularly appropriate. *McNeilab, Inc. v. American Home Products Corp.*, 675 F.Supp. 819, 826 (S.D.N.Y. 1987), *aff'd*, 848 F.2d 34 (2d Cir.1988).

Plaintiff contends that the statement on defendant's packaging that "Structures" "attaches to Playskool Pipeworks* " constitutes false advertising. Plaintiff claims that (1) a "Structures" connector will not lock into a "Pipeworks" tube, (2) a "Structures" tube will lock into a "Pipeworks" connector only if the "Structures" retainer clip is removed, (3) since the "Structures"

short tubes are slightly longer than the "Pipeworks" short tubes, a structure combining those tubes may be lopsided and unstable, and (4) any structure composed of pieces from both products is unsafe because those "Structures" pieces which do connect to "Pipeworks" pieces connect only at one point not at two as in the "Pipeworks" system.

The statements on defendant's packaging "Attaches to Playskool Pipeworks*" may be literally true. Understood most narrowly, defendant's pieces can in fact be joined or connected to plaintiff's pieces. However, the clear implication of the statement is that "Structures" attaches safely to "Pipeworks." On a box of toys for preschool children the statement can have no other reasonable meaning.

At the hearing two witnesses for the plaintiff, the product manager for "Pipeworks" and an Associate Vice President of Quality Assurance of Hasbro, Inc., testified that the consuming public would understand "Attaches to Playskool Pipeworks*" to mean "attaches safely" to plaintiff's product. Defendant introduced no evidence that consumers would interpret the statement differently. Indeed, counsel for defendant conceded that this interpretation was correct but argued that defendant's product does attach safely to plaintiff's product.

The court does not agree. Although defendant's demonstrations at the hearing suggest that some of the defendant's pieces may attach safely to some of plaintiff's pieces, the court finds that defendant's product does not uniformly attach safely to plaintiff's product.

The fact that defendant's short tubes are a different length than the plaintiff's short tubes creates the possibility that if both kinds of tubes are used together the resulting structure will be unsafe. Moreover, in order for a "Structures" connector to be locked into a "Pipeworks" tube, the child must use one of defendant's special retainer clips to fasten the two pieces together. As the court observed during the hearing, such clips are not easily fastened to such a configuration. Indeed, this connection may

be too difficult for preschool children to manage. Alternatively, if children are unsuccessful in their attempts to join the two pieces by using a clip, they may attempt to put the two pieces together without any locking mechanism. This would clearly be unsafe.

The implication of the statement on defendant's product is that all "Structures" pieces can be safely intermingled with all pieces from "Pipeworks." The statement does not specify that certain pieces from one product may be safely used with certain pieces from the other product, nor is the statement otherwise limited or qualified. The court therefore finds that the statement is misleading. Since plaintiff has shown that at least some "Structures" pieces cannot be safely attached to some "Pipeworks" pieces, plaintiff has met its burden of showing a likelihood of success on the merits of the false advertising claim.

### (b) trademark infringement

■ The Lanham Act creates a claim for trademark infringement when a holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product. See 15 U.S.C. § 1114(1)(a) (1982); Home Box Office, Inc. v. Showtime/The Movie Channel, Inc., 832 F.2d 1311, 1314 (2d Cir.1987). The Lanham Act was designed to prevent likely confusion in the minds of consumers "as to (1) the relationship between the trademark holder and a competitor seeking to use that mark or a substantially similar mark in its own marketing efforts and (2) the source of the product being represented by the trademark or a substantially similar mark." Id.

A showing by a party moving for a preliminary injunction of a likelihood of confusion as to source or sponsorship establishes a likelihood of success on the merits as well as risk of irreparable harm. See Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704, 708 (2d Cir.1982); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 8 U.S.P.Q.2d (BNA) 1345, 1347 (2d Cir. 1988). Where confusion from the use of that trademark could result in physical

harm to the consuming public the court may as a matter of policy grant relief on lesser proof of confusion. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566, 569 (2d Cir.1971).

Plaintiff asserts that defendant's use of their registered trademarks is calculated to deceive the public into believing that plaintiff is the source of, is associated with, or has sponsored the "Structures" product. Plaintiff notes that only its name appears on the box panels facing consumers on a store shelf. The sole reference to defendant's name is on the back of the box.

The court finds that, even if lesser proof of confusion is proper here, defendant's use of the registered trademarks "Playskool" and "Pipeworks" on the packaging is not likely to confuse consumers as to the source or sponsorship of defendant's product.

The words "Attaches to Playskool Pipeworks*" are found in rather small blue print beneath the banner running along the package's top. These words are in substantially smaller print than the name of defendant's product or the words "Building Pipes for little people" appearing above the trademarks. The two registered trademarks are reproduced in different colors and with a different typeface than that used by plaintiff on its own packaging. Moreover, the content of the message "Attaches to Playskool Pipeworks*" itself is not likely to suggest to consumers that "Structures" is made or is in any way endorsed by plaintiff. Finally, the words in question are followed by an asterisk which explains in small but readable print that "Pipeworks is a registered trademark of Playskool, Inc. A subsidiary of Hasbro, Inc."

Plaintiff has not shown the probability of success on the merits as to its claim of trademark infringement.

#### (c) trade dress infringement

■ Plaintiff claims that defendant is infringing its trade dress by copying both the color scheme of plaintiff's product and its packaging.

The "trade dress" or total image of a product is entitled to protection as an unregistered trademark under Section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a) (1982); *Stormy Clime, Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 974 (2d Cir.1987). "Trade dress" means both a product's packaging and labelling and the product's design or appearance. *Id.*

In a typical trade dress case under the Lanham Act, plaintiff must show (1) that the trade dress of its product has acquired secondary meaning in the marketplace and (2) that the design of the competitor's product is confusingly similar. *Id.* Even if a manufacturer shows both, the competitor can prevail by establishing that the similar arrangement of features is functional. *Id.* A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982).

Proof of secondary meaning "entails vigorous evidentiary requirements," in accordance with the criteria established by the Court of Appeals for the Second Circuit. *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 217 (2d Cir.1985). In substance, someone seeking to show secondary meaning must establish that the purchasing public associates goods designated by a mark with a particular source. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir. 1987).

Despite testimony regarding plaintiff's advertising expenditures, sales success and some media coverage of its product, plaintiff has not demonstrated that the color scheme or packaging of "Pipeworks" has acquired secondary meaning in the relevant market. Defendant's exhibits exhibit a widespread use of white, blue, red and yellow colors for pre-school toys and their packaging. Defendant Weber testified that he chose the blue, red and yellow colors for his product because they were popular children's colors.

Moreover, defendant's product's color scheme is not identical to plaintiff's. Only four colors—white, blue, red and yellow—are used in the "Structures" system, whereas plaintiff's "Pipeworks" contains seven colors, including orange, green and lavender. "Pipeworks" connectors are color-coded in that each type of connector has a different color, while in the "Structures" system different connectors share the same color. Plaintiff has no exclusive interest in the use of the colors white, blue, red and yellow in the market for construction systems for preschool children.

Defendant Weber further testified that, among other reasons, he designed the straight tubes in his system to be white in order to lower costs, white plastic costing him 14 cents per pound less than colored plastic. He intended to construct his system at lower cost than his competitors and sell it at a lower price. The white color of defendant's straight tubes is functional and hence does not infringe on plaintiff's trade dress.

In order to succeed on a trade dress infringement claim, plaintiff must also show a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Centaur Communications,* 832 F.2d at 1225. Under the criteria set forth in *Polaroid Corp. v. Polorad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), and *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986), this court finds that consumers are not likely to confuse the "Structures" packaging with that of "Pipeworks."

The typefaces on each are different. A blue banner dominates the "Pipeworks" box running across its upper third. Photographs with blue backgrounds are also prominent. The "Structures" box has no such prevalence of blue coloring. Furthermore the blue color used on defendant's packaging is a noticeably different shade of blue than that used by plaintiff. As noted above, defendant's use of plaintiff's trademarks is not likely to create confusion as to the source of defendant's product. Finally, the quality of the defendant's packaging is substantially inferior to that of plaintiff's, a difference that would be clear to an ordinarily prudent consumer.

Plaintiff has not shown a probability of success on the merits as to trade dress.

### III.

Under New York law proof of secondary meaning is not necessary in order to obtain relief from infringing trade dress. *20th Century Wear, Inc. v. Sanmark–Stardust, Inc.,* 815 F.2d 8, 11 (2d Cir.1987). New York law focuses on whether the public is likely to be confused by the similar trade dress. *Id.* In addition, under New York law, trade dress must be "distinctive" in order to be protected. *Id.*

For reasons already stated, consumers are not likely to confuse defendant's product or packaging with plaintiff's. Moreover, the use of the colors white, red, blue and yellow does not constitute distinctive trade dress for pre-school children's toys. Plaintiff is not entitled to injunctive relief for trade dress infringement under New York law.

### IV.

Defendant moves pursuant to Fed. R.Civ.P. 65(a)(2) to consolidate the trial on the merits with the hearing on the preliminary injunction. Defendant contends that consolidation is appropriate because (1) plaintiff did not seek relief in a timely fashion and (2) defendant's economic vitality is threatened by the pendency of this action. Plaintiff responds that consolidation would be premature before joinder of issue, before defendant files an answer and before discovery is completed.

Fed.R.Civ.P. 65(a)(2) provides in part that [b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

The court must give the parties notice of such consolidation sufficient to give them an adequate opportunity to present their

case. *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 100–01 (2d Cir.1985). The key requirement is that the parties be given a full opportunity to present their evidence. *Id.*

Defendant argues that because plaintiff delayed in filing this action, the court should consolidate the trial on the merits with the hearing on the preliminary injunction. In support of its position, defendant relies on two cases, *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985) and *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985). This argument is without merit. In neither case cited did the court discuss the issue of consolidation under Fed.R.Civ.P. 65(a)(2). In both the delay was lengthy, nine months and two years respectively. In fact defendant has not provided any evidence that plaintiff sought to delay bringing the case. Common sense suggests that the longer plaintiff waited to challenge defendant's product the greater injury it stood to suffer.

Plaintiff states that it intends to seek considerable additional discovery. The parties have not yet been given a full opportunity to present their evidence. Therefore, the court finds that consolidation of the trial on the merits with the hearing on the preliminary injunction would be inappropriate in this case.

### V.

 The court will issue a preliminary injunction based on the claim of false advertising under the Lanham Act. In fashioning injunctive relief the court should "mould each decree to the necessities of the particular case." *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir.1981), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944)). Defendant will be enjoined from using the language "Attaches to Playskool Pipeworks*" on the packaging for their "Structures" construction system. Such broad unqualified language may not be included on defendant's packaging.

Because the misleading language on defendant's packaging creates a potential safety hazard for children, the court will require defendant to recall all of their product already sold and distributed which contains the language noted above. The court has considered the likely burden and expense of recall, *see, e.g., Perfect Fit*, 646 F.2d at 807, but finds it appropriate where public safety is at stake.

All other relief requested by plaintiff is denied.

### VI.

Plaintiff's motion for preliminary injunction is granted. Defendant's motion for consolidation of the trial on the merits with the hearing on the preliminary injunction is denied. Submit order on notice. So ordered.