In re Tyco Int'l Ltd. MDL (03-1342)    MD-02-1335-B  12/29/03

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**In re Tyco International, Ltd.**
**Multidistrict Litigation (MDL 1335)**

MDL DOCKET NO. 02-1335-B
**TYCO-PLAINTIFF ACTIONS**
Case No. 03-1342-B
Opinion No. 2003 DNH 228


**MEMORANDUM AND ORDER**


Tyco International, Ltd. fired its former General Counsel, Mark Belnick, and sued him for fraud and breach of fiduciary duty.  One of the complaint's several counts seeks a declaratory judgment that Belnick fraudulently induced Tyco to enter into a "Retention Agreement" that guaranteed Belnick substantial benefits if he was terminated.  The Retention Agreement contains an arbitration clause which provides that "[a]ny dispute or controversy under this agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association then in effect."  Belnick claims in a motion to compel arbitration that all of Tyco's claims are subject to the arbitration clause.

## I.

The first question presented by Belnick's motion is whether Tyco is required to arbitrate its fraudulent inducement claim. Tyco argues that the Retention Agreement's arbitration clause only requires the parties to arbitrate disputes that concern the interpretation or implementation of the agreement. Thus, it argues that a fraudulent inducement claim is not "a dispute or controversy under" the agreement because the claim is based on misconduct that predates the adoption of the agreement. Belnick counters by arguing that the fraudulent inducement claim is "under" the agreement because it attacks the agreement's validity.

I cannot resolve this dispute using only New York's general principles of contract interpretation because the arbitration clause is ambiguous and neither party has identified any extrinsic evidence that might eliminate the ambiguity.[1] In other words, having only the language of the clause itself as a guide, I cannot say with any degree of certainty which of the two

---

[1] I look preliminarily to New York law because the Retention Agreement contains a choice of law clause specifying that it will be construed using New York law.

proposed interpretations better reflects the parties' objectively manifested intentions. Fortunately, federal law provides a default rule for resolving such disputes. As the Supreme Court has recognized, "[t]he [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The presumption of arbitrability seemingly resolves the issue in cases such as this where the arbitration clause plausibly can be construed to encompass the dispute that is before the court.

Tyco nevertheless invokes the Second Circuit's decision in In the Matter of the Petition of Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961), to support its position. In that case, the court held that a fraudulent inducement claim was not arbitrable under a clause that required the parties to arbitrate "[i]f any dispute or difference should arise under this Charter." Id. at 952. Tyco argues that Kinoshita is a binding precedent and is indistinguishable because there is no real difference between clauses that require the arbitration of disputes that "arise under" a contract and those that require the arbitration of

disputes "under" the contract, as is the case here.  I reject Tyco's argument because <u>Kinoshita</u> is neither binding nor indistinguishable.

<u>Kinoshita</u> is not a binding precedent because, as the transferee court in a multidistrict litigation case, I am not obligated to follow unpersuasive federal law precedents issued by the circuit court of the transferor court.  <u>See</u> <u>In re Korean Air Lines Disaster of September 1, 1983</u>, 829 F.2d 1171, 1174 (D.C. Cir. 1987).  <u>Kinoshita</u> is unpersuasive because it was decided prior to the enactment of the Federal Arbitration Act and thus does not recognize the presumption of arbitrability that is now a well established part of federal arbitration law.  Equally important, the decision is inconsistent with controlling Supreme Court and First Circuit precedents which have held that fraudulent inducement claims were arbitrable under arbitration clauses similar to the one at issue here.  <u>See</u> <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967); <u>Lummus Co. v. Commonwealth Oil Ref. Co.</u>, 280 F.2d 915, 931 (1st Cir. 1960); <u>see also</u> <u>Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.</u>, 774 F.2d 524, 528 (1st Cir. 1985) (rescission claim).

Tyco's contention that Kinoshita is indistinguishable also is unpersuasive. Kinoshita has been strictly limited to its precise facts. See, e.g., S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 855 (2d Cir. 1987); ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 33-34 (2d Cir. 2002). The case apparently survives only out of a concern that litigants may have relied on its holding in drafting arbitration clauses. See S.A. Mineracao Da Trindade-Samitri, 745 F.2d at 194. This concern is not present here because the Retention Agreement's arbitration clause is not identical to the clause at issue in Kinoshita. Thus, I would reach the same result even if I were required to resolve the dispute using Second Circuit law.

## II.

Tyco also asserts that Belnick breached fiduciary duties he owed to the company and committed other fraudulent acts that are unrelated to the Retention Agreement. Belnick argues that these claims either should be referred for arbitration along with the fraudulent inducement claim or stayed pending the outcome of the

arbitration because they are intertwined with the fraudulent inducement claim.

I have found no support for the proposition that a party may be compelled to arbitrate otherwise nonarbitrable claims simply because they are intertwined with arbitrable claims. To the contrary, the case law recognizes that piecemeal resolutions of arbitrable and nonarbitrable claims are to be expected under the Federal Arbitration Act. See Moses H. Cone Mem'l Hosp., 460 U.S. at 20. For this reason, and because Belnick makes little effort to develop the argument on his own, I do not deem it to merit extensive analysis. Instead, I merely note that Tyco's remaining claims do not concern the implementation or interpretation of the Retention Agreement. Nor do they directly attack the validity of the agreement. While several of Tyco's claims overlap factually with its fraudulent inducement claim, the overlap is not sufficient to bring the claims within the scope of the Retention Agreement's arbitration clause.

Belnick is on somewhat firmer ground in seeking to stay the litigation of the nonarbitrable claims until the fraudulent inducement claim is resolved. The First Circuit has recognized that a district court has the discretionary power to stay the

litigation of nonarbitrable claims until related arbitrable claims are resolved when such a stay serves in the interests of efficiency and judicial economy.  See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 20-21 (1st Cir. 1986).  Moreover, as the Second Circuit has recognized, a stay may be particularly appropriate "if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  See Genesco, 815 F.2d at 856.

While I acknowledge Tyco's contention that there will be evidentiary overlap between the arbitration of Tyco's fraudulent inducement claim and the litigation of its nonarbitrable claims, I am not convinced that allowing the arbitration to proceed will significantly impair my ability to oversee and efficiently resolve the nonarbitrable claims.  Further, the fraudulent inducement claim is not the predominate claim in this litigation and I am not prepared at this early stage of this complicated case to pass judgment on the merit of Tyco's other claims.  Finally, the public has a strong interest in seeing that this case is resolved expeditiously and I am unwilling to risk the additional delay that will result from a stay of Tyco's

nonarbitrable claims.  Accordingly, I decline to stay the litigation of the nonarbitrable claims.

## III.

For the reasons set forth in this Memorandum and Order, I grant Belnick's Motion to Compel Arbitration of Tyco's fraudulent inducement claim and otherwise deny its request to either compel arbitration of Tyco's remaining claims or to stay the litigation of those claims until the fraudulent inducement claim is resolved.[2]

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 29, 2003

cc:  All Counsel of Record

_____

[2]  Tyco's cross-motion to stay the arbitration (doc. no. 7) is also denied.  I have rejected Tyco's contention that only the court can resolve Tyco's fraudulent inducement claim.  Moreover, a stay of the arbitration proceeding simply is not required to preserve Tyco's interest in litigating the nonarbitrable claims. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222 (1985).