David H. JANDA, Plaintiff,

v.

RILEY–MEGGS INDUSTRIES, INC., a Canadian company, and Ron Foyt d/b/a Megg–Nets U.S.A., a Minnesota citizen, Defendants.

Civ. A. No. 89–71690.

United States District Court, E.D. Michigan, S.D.

May 21, 1991.

Mark A. Cantor, Earl J. LaFontaine, Elizabeth F. Janda, Brooks & Kushman, Southfield, Mich., for plaintiff.

Mark E. Straetmans, Berry, Moorman, King & Hudson, Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING IN PART, AND DENYING IN PART, FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Jurisdiction is proper based on diversity of citizenship. Plaintiff filed a motion for summary judgment March 6, 1991. Defendants Riley–Meggs Industries, Inc. and Ron Foyt filed a response April 2, 1991. Plaintiff then filed a reply April 17, 1991. The court heard oral argument May 1, 1991.

## BACKGROUND FACTS

Dr. David H. Janda, plaintiff, is an orthopaedic surgeon licensed to practice medicine in Michigan. Defendant Riley–Meggs Industries, Inc. ("Riley–Meggs") is a Canadian corporation which manufactures and sells softball and baseball bases called "Megg–Nets." Defendant Ron Foyt ("Foyt") is the sole distributor of Megg–Nets bases in the U.S.

Plaintiff claims that he has gained a significant reputation as a result of his substantial research and his published articles on preventive medicine in the sports medicine field. Plaintiff claims his most recognized study has been the three-part study (the "University of Michigan study") of softball and baseball injuries due to sliding and the prevention of these injuries by the use of a particular type of detachable base. The base used in plaintiff's University of Michigan study was a base invented by Mr. Roger Hall and currently marketed as the Rogers Break Away Base™.

Plaintiff claims he began his study of softball sliding injuries and their possible prevention in 1984. In the first phase of his study he discovered that 71% of softball injuries were due to sliding. His research culminated in an article published in *American Family Physician.*

Plaintiff then examined various bases on the market and chose to use the Rogers base in his University of Michigan study. Plaintiff claims that for four years he studied softball sliding injuries and how the use of the Rogers base could help to prevent such injuries. In this second phase of the study, plaintiff and his co-authors concluded that 96% of sliding injuries could be prevented, and 99% of acute medical care costs associated with sliding injuries could be prevented with the use of the base he used in his study. Phase II of the research was incorporated in an article published in the March 25, 1988 issue of the *Journal of the American Medical Association* and titled "A Prospective Study: Base Sliding Injuries—Stationary vs. Break–Away Bases."

Plaintiff claims that the Center for Disease Control in Atlanta independently extrapolated the figures from his study and concluded that nation-wide use of the base from this study could save $1.2 billion in medical care costs annually. Plaintiff claims he presented the results from the third phase of his study at the national meeting of the American Academy of Orthopaedic Surgery in February 1989.

Plaintiff claims that since the beginning of his study in 1984, he has given over 50 radio and television interviews relating to his study, and his results have been reported nationally and internationally in newspapers and magazines. Plaintiff claims that as a result of this study, he has received national and international exposure and recognition.

In 1989 plaintiff received the "Excellence in Research Award" in epidemiology from the American Orthopaedic Society for Sports Medicine, which plaintiff claims is the award for the most outstanding clinical research in sports medicine in the country. In addition, plaintiff claims that the integrity and credibility of his name and reputation are widely recognized in Michigan, throughout the United States, and internationally.

Defendant Riley–Meggs Industries, Inc. ("Riley–Meggs") is a Canadian corporation which manufactures and sells a softball or baseball base, called the "Megg–Nets" base, in Canada and the United States. Defendant Ron Foyt is the sole distributor of those bases in the United States. Plaintiff contends that the Megg–Nets base is a detachable base that, unlike the Rogers

base used in the University of Michigan study, uses magnets as a means of affixation.

Plaintiff claims that the torts in this action arise from alleged false and deceptive advertising practices used in connection with defendants' sale of the Megg–Nets base. Plaintiff submits that since the March 25, 1988 publication of the second phase of the University of Michigan study, defendants have engaged in the unauthorized use of his name and the study for defendants' own advertising purposes and commercial gain and, in addition, have made false representations as to the safety of the Megg–Nets bases.

Plaintiff asserts that defendants began using flyers (Exhibit A) to advertise and promote the sale and use of the Megg–Nets base. Plaintiff alleges that the advertising falsely represents that Dr. Janda and his University of Michigan studies relating to softball injuries specifically endorse the Megg–Nets base. The advertising states "STUDY SUPPORTS MAGNETIC BASE," and refers to the study conducted by Dr. Janda at the University of Michigan "... and reported in the Journal of American Medical Association." In addition to quoting plaintiff from his article, the ad stated, "We know from previous studies that more than 70 percent of softball injuries are sliding injuries because the players just don't know how to slide, Janda said. It made sense that something like *this* breakaway base would help and we are delighted with the results." Exhibit A (emphasis added). Plaintiff contends that reference to "this breakaway base" falsely leads the reader to believe that the Megg–Nets base, which is the subject of the advertising, is the base to which Dr. Janda referred.

The advertisement goes on to quote the Center for Disease Control's conclusions about the significance of plaintiff's study by stating, "... If Janda's results were extrapolated nationally, this would indicate that stationary bases are responsible for 1.7 million injuries a year, resulting in $1.5 to $2 billion in medical costs. The breakaway bases, in contrast, would be involved in 70,000 injuries, at a cost of $24 million."

Exhibit A. Plaintiff contends that this leads the consumer to believe that these results can be reached through the use of the Megg–Nets base when there is allegedly no evidence to support that claim.

The reverse side of the advertisement was a letter to "Park & Rec" personnel. The letter claims that the Megg–Nets base can reduce injuries by 96% as shown by Dr. Janda's study.

Are you concerned about sliding injuries, the high cost of liability or how often you need to replace bases? If so, you will be interested in the MEGG–NET SUPER BASE SYSTEM. This system features a magnetic break-away base that can reduce injuries by 96%. (See the reverse side for more information gathered in a recent study by the University of Michigan.)

Exhibit A. By specifically referring to Dr. Janda and his University of Michigan study, plaintiff claims that defendants falsely communicated that Dr. Janda supported and endorsed the Megg–Nets base.

After learning of defendants' advertising, plaintiff formally notified defendants that they were not authorized to use his name or the University of Michigan study to promote the sales of their products. In a certified letter of March 10, 1989, plaintiff demanded that defendants cease all use of the objectionable advertising, cease all use of his name and reference to his study, and provide him with information to allow him to contact purchasers to inform them that he did not endorse their product.

Plaintiff filed suit in state court April 20, 1989, alleging that defendants' actions (1) constituted false representations and federal unfair competition in violation of 15 U.S.C. § 1125; (2) constituted unfair trade practices in violation of the Michigan Consumer Protection Act (M.C.L.A. § 445.901 *et seq.*) and the Pricing and Advertising Act (M.C.L.A. § 445.351 *et seq.*); and (3) constituted an invasion of privacy and misappropriation of plaintiff's name and reputation for defendants' commercial advantage. Defendants subsequently removed the matter to federal court.

Plaintiff contends that by defendants' allegedly false representations and deceptive trade practices, they have caused and continue to cause (a) irreparable harm to plaintiff and his reputation, and (b) deception and false understanding in the public. Plaintiff seeks summary judgment on the issue of liability on the issues of false advertising, unfair and deceptive trade practices, and misappropriation of plaintiff's name and reputation for defendants' commercial gain.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

### A. False Representation and Federal Unfair Competition

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides in relevant part that:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or

any ... false or misleading description of fact, which—(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

 A statement that is "affirmatively misleading, partially incorrect, or untrue as a result of failure to disclose a material fact [is actionable under § 43(a)]." *U.S. Healthcare v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir.1990). The Lanham Act thus creates a cause of action for any false description or representation of a product. *U.S. Healthcare*, 898 F.2d at 921 (quoting 2 J. McCarthy, *Trademarks and Unfair Competition*, § 27:7B (2d ed. 1984)).

 In the present case the court finds that the advertising flyer (Exhibit A) is a clear violation of § 43(a) of the Lanham Act. The advertisement is rife with statements that deceive potential purchasers into believing there is an association between the University of Michigan study and defendants' product.

After quoting Dr. Janda and statistics from the study, the advertisement continues as follows:

We know from previous studies that more than 70 percent of softball injuries are sliding injuries because the players just don't know how to slide, Janda said. It made sense that something like *this* breakaway base would help and we are delighted with the results.

Exhibit A (emphasis added). The reference to *this* breakaway base gives buyers the incorrect impression that the Megg–Nets base, which is the subject of the advertising, is the base to which Dr. Janda referred. Defendant Ron Foyt falsely led buyers to conclude that use of *his* bases would effect the same results as those found in the study. Both defendants admit that no research has ever concluded that use of their product would bring about these same results. Meggs' Deposition, pp. 35–36, 68, 75, 77–78; Foyt Deposition, pp. 35–36, 52–53, 83, 95.

In addition, the letter on the reverse side of the advertising claims, "This system features a magnetic break-away base that can reduce injuries by 96%. (See reverse side for more information gathered in a recent study by the University of Michigan.)" Exhibit A. Again, both defendants admit that no study producing such results has ever been conducted on their product.

Both defendants further admit that they intended to use the University of Michigan study to promote sales of the Megg–Nets base. Meggs' Deposition, pp. 71–72; Foyt Deposition, pp. 56–57.

In *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C.Cir.1990), the court reviewed findings of false advertising in violation of § 43(a) of the Lanham Act. The court found that the district court had applied the proper test:

... [t]o prevail in a false advertising suit under section 43(a), a plaintiff must prove that the defendant's ads were false or misleading, actually or likely deceptive, material in their effects on buying decisions, connected with interstate commerce, and actually or likely injurious to the plaintiff. *Alpo [Petfoods, Inc. v. Ralston Purina Co.,]* 720 F.Supp. [194] at 213 [D.C.Cir.1989] (citing *inter alia, Skil Corp. v. Rockwell Int'l Corp.*, 375 F.Supp. 777, 783 (N.D.Ill.1974)); accord *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir.1989).

913 F.2d at 964.

The court finds as a matter of law that the advertising flyer was misleading and actually deceptive. This deceptive advertising was material in its effects on buying decisions because it mislead the buyer in terms of the product's safety, a critical consideration in the purchase of sporting

goods for use by the general public. There is no dispute that these bases were sold through interstate commerce. Defendant Foyt, the sole distributor of the bases, operates the business from Minnesota, and the bases are sold across the United States.

In determining whether plaintiff was injured by the deceptive advertising, the court looks to a recent district court decision, *Playskool, Inc. v. Product Dev. Group, Inc.*, 699 F.Supp. 1056, 1059 (E.D. N.Y.1988). In *Playskool* the court stated as follows:

> Where the plaintiff shows false or misleading advertising in violation of the Lanham Act, the court will presume irreparable harm, *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988); where the false or misleading advertising claims could result in physical harm to the consuming public, that presumption is particularly appropriate. *McNeilab, Inc. v. American Home Products Corp.*, 675 F.Supp. 819, 826 (S.D.N.Y.1987), *aff'd*, 848 F.2d 34 (2d Cir. 1988).

■ Since the plaintiff in the present case has shown false or misleading advertising in violation of the Lanham Act, the court will presume irreparable harm to the plaintiff. Indeed, an argument could be made that the misleading claims of the safety of Megg–Nets could result in physical harm to ballplayers, assuming, of course, that safety was the top priority of the persons who ordered the equipment.

Other district courts have found that in an action seeking an injunction against false advertising, the moving party carries its burden of establishing irreparable harm when it offers proof providing a reasonable basis for the belief that the moving party is likely to be damaged as a result of the false advertising. *Sandoz Pharmaceutical v. Richardson–Vicks, Inc.*, 735 F.Supp. 597, 601 (D.Del.1989); *Stiffel Co. v. Westwood Lighting Group*, 658 F.Supp. 1103, 1104 (D.N.J.1987).

Plaintiff has offered sufficient proof providing a reasonable basis for the likelihood that he has been damaged as a result of the false advertising. Plaintiff, having conducted the University of Michigan study and reported the findings in acclaimed medical journals, has established himself as an expert in the field of sports medicine. Plaintiff himself has been damaged by having his name and study affiliated with the false advertising. This portion of the suit will be discussed more fully later.

■ Finally, all remedies afforded under § 35 of the Lanham Act, including attorney's fees, apply to § 43(a) cases. *WSM, Inc. v. Wheeler Media Services, Inc.*, 810 F.2d 113 (6th Cir.1987).

### B. Deceptive Trade Practices

The Michigan Consumer Protection Act is set forth in M.C.L.A. § 445.901 *et seq.* The statute provides, in pertinent part, that deceptive and unfair trade practices include the following:

> (a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods or services.
>
> (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person had sponsorship, approval, status, affiliation, or connection which he does not have.
>
> * * * * * *
>
> (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.
>
> (cc) Failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

M.C.L.A. § 445.903(1)(a), (c), (bb), and (cc).

■ The provisions of the Michigan statutes closely parallel those under § 43(a) of the Lanham Act. It is clear from the plain language of the statute and the wording of the flyer as analyzed in the previous count that the advertising is, as a matter of law, in violation of M.C.L.A. § 445.903(1)(a), (c), (bb), and (cc).

The Consumer Protection Act further provides that a person engaging in deceptive or unfair trade practices as defined in M.C.L.A. § 445.903 may properly be enjoined "in accordance with the principles of equity." M.C.L.A. § 445.911(1)(b).

In addition, a person suffering loss as a result of such deceptive or unfair trade practices "may bring an action to recover actual damages or $250.00, whichever is greater, *together with reasonable attorneys' fees.*" M.C.L.A. § 445.911(2) (emphasis added).

### C. Invasion of Privacy

#### 1. Misappropriation of Another's Name for Commercial Benefit

█ In his landmark article concerning invasion of privacy, Dean Prosser set forth four areas of the common law right of privacy: (1) intrusion upon one's seclusion or solitude, (2) public disclosure of embarrassing private facts, (3) publicity which places one in a false light, and (4) unauthorized appropriation of one's name or likeness for the defendant's advantage. *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983), citing Prosser *Privacy,* 48 Calif.L.Rev. 383, 389 (1960).

Michigan recognized all four of these privacy rights in *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522 (1977) even though unauthorized appropriation of one's name for commercial benefit was not specifically addressed by that court.

In the present case it is clear that defendant Foyt used results of the University of Michigan study to increase sales of the Megg–Nets bases. Defendant Foyt does not dispute that he used plaintiff's name and words without plaintiff's permission in order to increase sales of Megg–Nets bases.

#### 2. False Light

█ False light invasion of privacy requires a publication which places one in a light highly offensive to the reasonable person. The defendant must have known of the falsity or acted in reckless disregard of the falsity of the publicized matter.

*Early Detection Center v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830 (1986).

█ Regarding this count of the complaint, plaintiff has failed to show that there is an absence of evidence to support the nonmoving parties' case. There remains a genuine issue of material fact regarding how offensive the publication of plaintiff's name was to the reasonable person. This a question of fact to be determined by the jury.

### D. Injunctive Relief

█ In the conclusion of his brief in support of this motion for summary judgment, plaintiff additionally seeks a permanent injunction against defendants' further use of plaintiff's name or reference to the University of Michigan study in their advertising. It is well documented that a permanent injunction issues after a hearing on the merits. 42 Am.Jur.2d *Injunctions* § 13 (1964). The court finds plaintiff's pleadings insufficient to issue a permanent injunction at this time.

### CONCLUSION

In the brief in support of his motion for summary judgment, plaintiff has demonstrated the absence of all genuine issues of material fact regarding defendant Foyt's liability for the first two counts of the complaint as well as the misappropriation portion of the third count. The flyer that was drafted and mailed by defendant Foyt is clearly a violation pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as the Michigan Consumer Protection Act, M.C.L.A. § 445.901 *et seq.* and the Pricing and Advertising Act, M.C.L.A. § 445.351 *et seq.* Furthermore, defendant Foyt misappropriated plaintiff's name for commercial benefit and without plaintiff's permission. Plaintiff has carried his burden of showing that there is an absence of evidence to support defendant Foyt's case. Defendant Foyt has failed to produce evidence sufficient to require submission to the jury of the dispute over the facts. However, the question of defendant Foyt's liability for publishing plaintiff's name in a false light is a question of fact to be deter-

mined by the trier of fact because plaintiff failed to show that there is an absence of evidence to support defendant Foyt's case.

Defendant Riley–Meggs Industries contends that the advertising flyer sent to 4,700 municipal park and recreation officials was drafted by defendant Foyt and mailed without the corporation's knowledge or approval. Defendant Riley–Meggs' Response Brief, p. 4. The flyer itself bears the name of defendant Foyt and what is believed to be his Minnesota mailing address. Exhibit A. There remains, then, a genuine issue of material fact concerning the liability of the corporate defendant.

Finally, the court finds that a permanent injunction does not issue at the present time.

## ORDER

NOW THEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is GRANTED regarding defendant Foyt's liability pursuant to § 43(a) of the Lanham Act, 15 U.S.C. 1125(a), the Michigan Consumer Protection Act, M.C.L.A. § 445.901 *et seq.*, the Michigan Pricing and Advertising Act, M.C.L.A. § 445.351 *et seq.*, and the common law tort of unauthorized appropriation of another's name for commercial benefit.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED regarding issuance of a permanent injunction of defendants' further use of plaintiff's name or reference to his study in their advertising.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED regarding defendant Foyt's liability in publishing plaintiff's name in a false light.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED regarding liability of defendant Riley–Meggs Industries, Inc. for all counts of the complaint.

SO ORDERED.