In re SPEARING TOOL
& MANUFACTURING
CO., INC., Debtor.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 6, 1994.

SPEARING TOOL & MANUFACTURING
CO., INC., Plaintiff,

v.

BUCCANEER TOOL & DIE CO., MST
Steel Corp., United Materials Co., Emmie Die & Engineering, and Griffin
Steel Corp., Defendants.

Bankruptcy No. 93–46916–R.
Adv. No. 94–4287–R.

Stephen M. Gross, Lindahl & Gross, P.C., Bingham Farms, MI, for debtor/plaintiff.

Michael Clawson, Birmingham, MI, for defendants.

## MEMORANDUM AND OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This matter comes before the Court on a motion for summary judgment filed by the debtor-in-possession, Spearing Tool & Manufacturing ["Spearing"]. Spearing filed this adversary proceeding against defendants Buccaneer Tool & Die Company, MST Steel Corporation, United Materials Company, Emmie Die and Engineering, and Griffin Steel Corporation [collectively "defendants"], to avoid an alleged fraudulent transfer of a security interest in Spearing's assets pursuant to M.C.L.A. § 566.17, and 11 U.S.C. §§ 544(b) and 1107(a).

### A.

As a result of financial difficulties in 1991, Spearing was unable to pay its secured creditors, tax obligations, and its suppliers. On August 22, 1991, Spearing met with an unofficial committee of its largest unsecured creditors and proposed an out-of-court debt repayment plan ["Plan"]. The undertaking of the Plan was necessary as a condition of NBD Bank, N.A.'s agreement to forbear from foreclosing on Spearing's property. The Plan provided that *all* unsecured creditors would receive a security interest in Spearing's assets in return for forbearance of payment.[1]

The Plan provided treatment for three classes of unsecured creditors: Class I unsecured creditors were owed $500 or less, Class II unsecured creditors were owed between $500 and $4,999.99, and Class III unsecured creditors were owed more than $5,000. By

---

1. Page 5 of the Plan provides:
 Payment of the amounts due under this Plan shall be secured by a security interest naming the Creditors' Committee as Trustee for all creditors whose claims are treated herein, the Secured Party, in all of SPEARING TOOL & MANUFACTURING CO., INC.'s tangible and intangible personal property including but not limited to all of its inventory, equipment, accounts, instruments, documents, and chattel paper. . . .
 (Unsecured Debt Repayment Plan, Exh. A of Defendants' Response to Motion for Summary Disposition, April 8, 1994).

January 1992, Spearing had gained acceptance of the Plan by Classes I and II. Two of the Class III creditors chose not to accept the Plan and instead sought remedial action by filing a lawsuit in state court. The remaining Class III creditors, who are now defendants in this adversary proceeding, had not accepted the Plan. These creditors/defendants, steel manufacturing and supply companies which sold materials and services on credit to Spearing in 1991, were Spearing's largest unsecured creditors. Without their acceptance of the Plan, Spearing would have been in financial ruins. Therefore, strenuous negotiations were entered into between Spearing and the defendants.

Spearing's negotiations with defendants resulted in granting defendants, and not any other class of unsecured creditors, a security interest in Spearing's assets in exchange for their approval of the Plan. The security interest to defendants was perfected on April 24, 1992. Classes I and II, who had already accepted the Plan under the auspices of receiving a security interest in Spearing's assets, were unaware that their right to a security interest had been lost as a result of the economic power of the defendants.

Once the Plan was approved, Spearing and NBD Bank, N.A. entered into a forbearance agreement. Moreover, Spearing negotiated an installment payment agreement with the taxing authorities. However, after fourteen months of operating under the Plan, Spearing had become insolvent. In June 1993, Spearing sought protection under Chapter 11.

## II.

In this adversary proceeding, Spearing claims that its purpose in granting the defendants a security interest in its assets was to hinder and delay creditors from pursuing other collection remedies.[2] Accordingly, Spearing seeks to avoid the security interest granted to defendants pursuant to M.C.L.A. § 566.17 and 11 U.S.C. §§ 544(b) and 1107(a). Spearing supports its motion for summary judgment by providing the Court

2. Spearing does not contend that the security interest granted to defendants was for purposes of defrauding creditors. Therefore, the Court

with an affidavit of Robert John Spearing (President, Director and stockholder of Spearing Tool). Robert Spearing's affidavit states that the Plan was entered into to "delay creditors that would be commencing collection litigation." (Affidavit, Robert John Spearing, Exh. 1, ¶ 5).

The defendants respond that the purpose of the Plan was not to delay or hinder creditors, but was merely a negotiated plan of repayment. Attached as Exhibit C to their response to this motion, the defendants provide the affidavits of Paul Munn (President, Director and stockholder of Griffin Steel Corp.) and Orville K. Thompson (President, Director and stockholder of MST Corp.), which state that at no time was it their intention to obtain a security interest in Spearing's assets in order to hinder or delay creditors from pursuing collection. Rather, the defendants argue that the security interest was extended in order to allow Spearing to continue operations, and the security interest merely protected the monies which were owed to defendants by Spearing. Defendants contend that the Plan was negotiated in good faith and therefore should not be set aside.

## III.

The issue before the Court is whether a genuine issue of material fact exists with respect to whether a security interest in Spearing's assets was granted to defendants in order to delay or hinder creditors from pursuing collection against Spearing, so as to constitute a fraudulent conveyance under M.C.L.A. § 566.17 and 11 U.S.C. § 544(b).

### A.

Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides, in pertinent part:

> (b) ... [The claimant] may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

will not address the issue of fraud for purposes of this motion.

(c) ... [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

All facts and inferences must be viewed in the light most favorable to the non-moving party, here defendants. *Matsusuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party, Spearing, has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Janda v. Riley–Meggs Industries, Inc.*, 764 F.Supp. 1223, 1227 (E.D.Mich. 1991).

■ A fact is "material" and precludes this Court's grant of summary judgment only if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the ... defense asserted ... and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Id.* (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984)). In other terms, summary judgment is appropriately granted where the issues in a case involve no more than the application of legal principles to undisputed facts. *See Choate v. Landis Tool Co.*, 486 F.Supp. 774 (E.D.Mich.1980).

### B.

■ Pursuant to 11 U.S.C. § 1107(a), a Chapter 11 debtor-in-possession is a trustee and is vested with the authority to avoid transfers of property under 11 U.S.C. § 544(b).

Spearing's action to recover the fraudulent conveyance is based, in part, on § 544(b), which provides:

The [debtor-in-possession] may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

This provision of the Code requires: (1) a "transfer," defined in 11 U.S.C. § 101(58)[54] as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption," and (2) the creditor whose right is asserted must be a "creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." Spearing has met both of these requirements. First, by granting the defendants a security interest in all of its assets, Spearing gave up an interest in its property, thereby constituting a transfer. Second, Spearing is attempting to avoid this transfer for the benefit of Class I and II unsecured creditors who, despite having accepted the Plan, were never given a security interest in Spearing's assets.

### C.

■ Whether a particular transfer may be avoided, and under what circumstances, are matters of state law. Applicable Michigan law, M.C.L.A. § 566.17, provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Under this provision, actual, not constructive, intent is required. However, the intent requirement is satisfied when the transfer is motivated wholly or in part by a desire to hinder, delay or defraud creditors.

■ To establish a claim under M.C.L.A. § 566.17 and 11 U.S.C. § 544(b), Spearing must prove three elements: (1) Spearing made a conveyance; (2) with actual intent to hinder, delay or defraud creditors; and (3)

that the action is being asserted on behalf of creditors.

 Elements one and three are not contested. First, Spearing made a conveyance by granting defendants a security interest in its assets. "Conveyance" is defined under M.C.L.A. § 566.11 as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." The grant of the security interest created a lien on all of Spearing's assets, thereby constituting a conveyance. The third element, that the action be asserted on behalf of creditors, is also undisputed. Spearing contends that the Plan prejudices Class I and II unsecured creditors by only granting defendants a security interest. Therefore, Spearing filed this adversary proceeding to invalidate the secured interest so that all unsecured creditors may be treated fairly and equally.

The second element, whether Spearing granted the security interest with an intent to hinder, delay or defraud creditors, is the element at issue here. Spearing does not contend that it was attempting to defraud creditors by entering into the Plan. Rather, Spearing argues that the security interest was granted to hinder and delay creditors from pursuing collection proceedings. In response, defendants argue that the purpose of the Plan, and ultimately the conveyance of the security interest, was not to delay or hinder creditors. Rather, it was to provide a systematic schedule of repayment without the need of Chapter 11 protection. Moreover, defendants assert that no creditor was prohibited, under the Plan, from pursuing collection proceedings. Rather, creditors who accepted the Plan voluntarily agreed to repayment under the Plan in lieu of expensive court proceedings.

 The Court agrees with defendants that the two Class III creditors who chose not to accept the Plan and instead sought remedial action through the state court, were not hindered or delayed by the grant of the security interest. However, the focus in these proceedings is not on these two individual creditors. Rather, the Court's focus is on Class I and II unsecured creditors. These creditors thought that they would receive a security interest in Spearing's assets in exchange for accepting the Plan, but were stripped of such security interest due to the economic bargaining power of the defendants, who insisted that they be the only parties who receive a security interest in Spearing's assets. By granting a security interest only to the defendants, Spearing intended to delay and hinder payment to the smaller unsecured creditors. In Chapter 11, and outside as well, those smaller creditors whose interests remain unsecured will be prejudiced by less favorable payment terms because of their unsecured status. Conversely, the defendants are guaranteed, by virtue of their secured status, payment in full either by cash or by foreclosure on the assets.

Robert John Spearing has submitted an affidavit to the Court attesting to his intentions, acting on behalf of Spearing, to delay and hinder creditors by entering into the Plan. In opposition, defendants have submitted the affidavits of Paul Munn (President, Director and stockholder of Griffin Steel Corp.) and Orville K. Thompson (President, Director and stockholder of MST Corp.), which support the contention that at no time was it their intent to delay or hinder creditors from collection by entering into the Plan and obtaining a security interest in Spearing's assets. Rather, defendants argue that the Plan was a mutual agreement fully bargained for, and therefore there is no direct proof of intent.

 The Court agrees with Spearing and rejects the defendants' argument. Although the Plan may have been negotiated and entered into in good faith and without fraud, Spearing had an actual intent to delay or hinder creditors. An intent to delay or hinder creditors, standing alone, is sufficient to constitute a fraudulent conveyance under M.C.L.A. § 566.17. The fact that the agreement was entered into in good faith does not negate Spearing's actual intent to delay and

hinder creditors from pursuing collection.[3]

For the reasons stated above, Spearing's motion for summary judgment is granted.

### JUDGMENT

For the reasons indicated in the Memorandum and Opinion entered this date, IT IS HEREBY ORDERED that Spearing Tool & Manufacturing Company, Inc.'s motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Spearing Tool & Manufacturing Company, Inc.'s conveyance of a security interest to defendants be set aside pursuant to M.C.L.A. § 566.17 and 11 U.S.C. § 544(b).

---

**3.** M.C.L.A. § 566.17 does not require a lack of good faith. *Compare with* M.C.L.A. § 566.14, which reads:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a *fair consideration.*

MICH.COMP.LAWS § 566.14 (1967) (emphasis added).

"Fair consideration," as defined in M.C.L.A. § 566.13, requires a showing of good faith. Therefore, in order to successfully prove fraud under M.C.L.A. § 566.14, the movant must show a lack of good faith.

The provision relied upon by Spearing in the present case, M.C.L.A. § 566.17, does not require a lack of fair consideration or a lack of good faith. This Court will not add requirements into the statute which were not intended by the legislature.