SQP, INC., Plaintiff,

v.

SIRROM SALES, INC. and Morcon,
Inc., Defendants.

No. 00–CV–1781.

United States District Court,
N.D. New York.

Feb. 14, 2001.

Lemery Mackrell Greisler LLC, Saratoga Springs, NY, for plaintiff, of counsel, Robert A. Lippman.

Fernandez, Burstein & Tuczinski, P.C., Albany, NY, for defendants, of counsel, Richard L. Burstein.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff SQP, Inc. ("SQP" or "plaintiff") filed the instant suit alleging trademark infringement by defendants Sirrom Sales, Inc. and Morcon, Inc. (collectively "Morcon" or "defendants") and seeking redress for such infringement pursuant to the Lanham Act, 15 U.S.C. § 1125, common law, and New York General Business Law §§ 349–350. In essence, SQP alleges that Morcon has falsely advertised that its brand of toilet tissue is equivalent to SQP's brand of toilet tissue, when the sheet counts of Morcon's toilet tissue are lower. Morcon answered and asserted similar Lanham Act, common law, and state law counterclaims against plaintiff.

On November 22, 2000, an Order to Show Cause issued temporarily restraining defendants from directly or indirectly advertising that their toilet tissue product known alternatively as "Morsoft®," "Millennium® Bath Tissue" or "Morsoft/Millennium® Bath Tissue" (collectively "Millennium") is the equivalent of plaintiff's Valay® bath tissue ("Valay"). No bond or other security was required for the issuance of the temporary restraining order. The Order to Show Cause further directed defendants to show cause why a preliminary injunction should not issue enjoining defendants from advertising equivalence; requiring defendants to alter their advertising to report an accurate sheet count for their toilet tissue products; requiring defendants to notify any person or entity who previously received an advertisement or solicitation claiming equivalence between Millennium and Valay, of the actual sheet count of Millennium and the fact of non-equivalence to Valay with respect to sheet count; and directing defendants to pay plaintiff's costs and attorneys fees associated with obtaining the aforementioned relief. Defendants filed responsive papers, to which plaintiff replied.

Oral argument was heard on January 29, 2001, in Utica, New York, with the attorneys for the parties participating by video conference from Albany, New York. Decision was reserved and the temporary restraining order was left in effect pending further order of the court. Moreover, the plaintiff, upon its consent, was directed to refrain from mentioning to customers in any manner the temporary restraining order.

## II. FACTS

SQP is a manufacturer of toilet tissue for industrial, commercial and institutional use nationwide. SQP manufactures Valay in 1–ply, 2500 sheet rolls and 2–ply, 1250 sheet rolls. SQP contends that sheet count is arguably the single-most important characteristic to purchasers of commercial toilet tissue. Consequently, SQP asserts that it maintains an extensive quality monitoring program to assure that the average sheet count of each roll produced and sold is within 1.5% of the advertised count.

In approximately July 2000, Morcon began production of 1–ply, 2500 sheet rolls and 2–ply, 1250 sheet rolls of toilet tissue. Morcon's Millennium was in direct market competition to SQP's Valay. During the initial introduction of Millennium into the marketplace, Morcon admittedly gave away as samples some rolls that contained fewer sheets than advertised (that is, fewer than 2500 and 1250 sheets, respectively).

Soon after Morcon entered the commercial toilet tissue market, SQP became aware of this new competition. SQP came into possession of a letter dated September 12, 2000, that stated in relevant part that Morcon was in production "of the equivalent to the Valay bath tissue." (*See* Compl. Ex. B.) The September 12, 2000,

letter referenced availability of Millennium 1–ply, 2500 count and 2–ply, 1250 count rolls and their prices, and offered samples if needed. According to Laura L. Morris, the Treasurer of both defendants, the September 12, 2000, letter was sent to one and only one of its customers, one Barry Goldman. (Morris Aff. ¶ 11–12.) Morcon sent one additional letter to one distributor in which Millennium was touted as "equivalent" to Valay, and did not make equivalence claims in any other manner. *Id.* ¶ 15. However, Morcon offered to sell Millennium in response to invitations for bids for "Valay-equivalent" toilet tissue.

Morcon asserts that it marketed Millennium as comparable or similar to Valay, but did not intend the use of the word equivalent to mean "exactly the same." Essentially Morcon posits that it was and is selling Millennium as a substitute for or alternative to Valay to be used in Valay dispensers.

On December 6, 2000, SQP sent a letter to its customers noting that a Temporary Restraining Order had been granted against Morcon, listing sheet counts from its tests of Millennium, and indicating that it would protect its products from false and misleading advertising and non-equivalent knock-off products. (Ans.Ex. B.)

SQP obtained some rolls of Millennium and undertook testing of those rolls. SQP retained an independent testing laboratory and a statistician to evaluate the sheet counts of Millennium. According to SQP's experts, whose testimony was proffered via affidavit, Millennium rolls consistently fall below 2500 and 1250 sheet counts, while Valay consistently meets the optimum 2500 and 1250 sheets per roll. The SQP results are described in more detail below.

Morcon also tested both its Millennium and SQP's Valay. Contrary to the findings set forth by SQP, Morcon sets forth, via its expert's affidavit, testing results showing that Millennium consistently meets its advertised sheet counts, whereas Valay rolls consistently contain fewer sheets than advertised. The determinations made by Morcon's expert are also more fully described below.

## III. DISCUSSION

### A. Preliminary Injunction Standard/False Advertising Claim

 A preliminary injunction should issue only where the party seeking such relief shows "that it is likely to suffer irreparable injury if relief is denied [and] also that there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [movant's] favor." *Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 747 F.2d 114, 118 (2d Cir.1984); *Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir.1999). In order to succeed on the merits of a false advertising claim under the Lanham Act, a party must show either literal falsity of the advertising under scrutiny or that the advertising is literally true but likely to mislead or confuse.[1] *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992).

 Thus, in order to establish a likelihood of success on the merits on an application for a preliminary injunction, a party

---

1. Trademark infringement and unfair competition claims under the Lanham Act and the common law are evaluated according to the same principles. *See American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 664 (2d Cir.1979). Similarly, there has been no suggestion by the parties that trademark infringement and unfair competition claims brought under the Lanham Act and New York General Business Law §§ 349–350 would be evaluated differently. Accordingly, the merits of any trademark infringement and unfair competition claims are not evaluated separately from Lanham Act claims. *See Procter & Gamble Co. v. Chesebrough–Pond's Inc.,* 588 F.Supp. 1082, 1083 n. 4 (S.D.N.Y.), *aff'd,* 747 F.2d 114 (2d Cir.1984).

must establish the likelihood that advertising is literally false, or if literally true then likely to mislead or confuse. If a showing is made that advertising is literally false, the irreparable harm prong of the inquiry may be met by a showing of specific, non-speculative, injury and causation. *See McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir.1988).

Where the allegedly false advertising claims comparison to a specific competing product, however, irreparable harm is presumed. *Id.* Accordingly, where the falsity of a comparative advertising claim is shown likely to be proven, fulfilling the success-on-the-merits prong of the injunctive relief inquiry, the irreparable harm prong is necessarily established and injunctive relief should be granted.

## B. Analysis of False Advertising Claim

SQP contends that Morcon's advertising that Millennium is equivalent to Valay is literally false. The sole basis for SQP's claim is that Millennium sheet counts are less than Valay sheet counts and therefore any claim of equivalence is false. SQP proffers a September 12, 2000, letter stating that Morcon was in production "of the equivalent to the Valay bath tissue," which SQP alleges was an advertising campaign to distributors. (*See* Compl. Ex. B.)

To establish a likelihood of success on the merits of this false comparative advertising claim SQP submitted the affidavits of two experts, and an SQP executive, purporting to show the literal falsity of defendants' statements of equivalency. Again, SQP's claim is based solely upon sheet counts. Thus, SQP attempts to show literal falsity by establishing that Millennium sheet counts are lower than Valay sheet counts.

SQP sets forth the following facts, in order to establish that its Valay sheet counts are accurate. Richard Bonaker, Executive Vice–President of SQP, explains the internal quality monitoring undertaken in order to maintain accuracy of Valay sheet counts. (Bonaker Aff. filed 11–20–2000.) Sample rolls are pulled from the production line and the number of sheets are manually counted. *Id.* ¶ 8. If the sheet count is acceptable then the sample rolls are weighed. *Id.* Thereafter every two-hundredth roll on the production line is weighed to ensure that rolls with proper sheet counts are being produced. *Id.*

In order to establish that, in contrast to Valay, Millennium sheet counts are consistently below 2500 and 1250, SQP submitted the affidavits of Robert P. Hayner ("Hayner") and William Howe, PhD. ("Howe"). Hayner, the Quality Manager for an independent materials testing laboratory retained by SQP, conducted testing of Valay and Millennium. Hayner obtained Valay samples from the SQP warehouse and Millennium samples through the ordinary stream of commerce. Hayner explained how a direct correlation between sheet count and weight was established, then how random samples could be evaluated according to those criteria to determine sheet counts for Valay and Millennium. (*See generally,* Hayner Aff.) Hayner concluded that Valay 1–ply rolls contained an average of 2513.37 sheets while Millennium 1–ply rolls contained an average of 1933.75 sheets. Hayner further determined that Valay 2–ply rolls contained an average of 1298.37 rolls while Millennium 2–ply rolls contained only 1008 on average. These Millennium sheet counts represent 22.6% and 19.4%, respectively, under the advertised 2500 and 1250 sheet counts.

In further support of SQP's position, Howe, a statistician, evaluated testing data provided by Hayner. Howe opined that applying the one-sided non-parametric tolerance limit formula, a standard statistical technique, to the Hayner data resulted in 95% confidence that at least 68.8% of Millennium rolls contain less than the labeled number of sheets. (Howe Aff. ¶¶ 7, 10, 13.)

SQP argues that the foregoing testing and statistical analysis of test results

shows that Morcon's advertising is false, thus SQP has established a likelihood of success on the merits of its unfair competition claim, entitling it to preliminary injunctive relief.

In opposition, Morcon first argues that Millennium sheet counts were not lower than Valay sheet counts. Thus, according to Morcon, any claim it may have made as to equivalence was not false based upon a comparison of the sheet counts of the two brands.

Morcon submitted the affidavit of its expert, John W. Walkinshaw ("Walkinshaw"), a consultant to the paper industry. Walkinshaw conducted tests of Valay and Millennium with regard to sheet count, roll width, roll diameter, roll weight, sheet basis weight, and paper thickness. (Walkinshaw Aff. ¶ 5.) This testing resulted in a finding that Valay sheet counts were consistently low, while Millennium sheet counts were consistently higher than the labeled amounts. *Id.* ¶ 7. Moreover, Walkinshaw criticized Hayner's use of weight as a correlation to sheet count, opining that such a correlation would be "suspect and unreliable". *Id.* ¶ 12. Walkinshaw continued by setting forth specific deficiencies in the methods used by SQP's experts, such as Hayner's failure to document scale calibration.

■ In short, the expert testimony proffered by SQP to establish a likelihood of success on the merits is refuted by the expert testimony proffered in opposition by Morcon. Determination of whether SQP is likely to succeed in proving that Millennium's claim of equivalence to Valay is literally false would require evaluation of the credibility of the parties' experts, which cannot be done without a full hearing on the matter. Notably, plaintiff did not request an expedited hearing at which expert testimony could be presented, as is often done in circumstances such as this. *See, e.g., Johnson & Johnson * Merck*, 960 F.2d at 296 (explaining that the trial court consolidated an application for a preliminary injunction with an expedited trial on

the merits); *I.T.S. Industria Tessuti Speciali v. Aerfab Corp.*, 280 F.Supp. 581, 590 n. 2 (S.D.N.Y.1967) (noting that applicant for preliminary injunction may forego opportunity when relying upon affidavits rather than requesting live testimony). The differing views of each expert about the reliability of the sampling and testing methods used by the respective adversaries creates questions of fact as to the sheet counts of Valay and Millennium. A disputed question of fact such as this need not be resolved on an application for a preliminary injunction. *See I.T.S. Industria Tessuti Speciali*, 280 F.Supp. at 589–90 (citing *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964)). Rather, determination of disputed facts should be made at trial.

■ SQP has failed to make the requisite showing that Millennium sheet counts are lower than Valay sheet counts in support of its false comparative advertising claim. Preliminary injunctive relief must be denied.

■ Second, Morcon contends that letters mentioning equivalence sent to only two distributors did not constitute dissemination of advertising or promotion, so that SQP fails to state a claim under the Lanham Act. *See, e.g., Garland Co. v. Ecology Roof Sys. Corp.*, 895 F.Supp. 274, 275 (D.Kan.1995) (finding that a single letter fails to meet the dissemination of advertising requirement under the Lanham Act). *But see Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005, 1020–21 (S.D.N.Y.1994) (finding that a single comparison letter sent to what was in effect the sole potential purchaser for the product constituted dissemination of advertising for Lanham Act purposes). In order to meet the commercial advertising or promotion requirement under the Lanham Act, a misrepresentation must "constitute commercial speech; ... be made by a defendant who is in commercial competition with plaintiff; ... for the purposes of influencing the purchase of its

goods and services;" and be made either in a classic advertising campaign or in informal promotions "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Mobius Mgmt. Sys. Inc.*, 880 F.Supp. at 1019–20 (internal quotations omitted).

SQP argues in response that the letters sent by Morcon constituted advertising and were disseminated for Lanham Act purposes. It is unnecessary to resolve this question, however, as a determination favorable to SQP would not be helpful to its application for a preliminary injunction, as set forth in the above analysis of the factual evidence presented by SQP. In other words, even assuming arguendo that Morcon did engage in an advertising campaign (for Lanham Act purposes), SQP failed to make the requisite success-on-the-merits showing that would entitle it to preliminary injunctive relief.

■ SQP additionally argues that the Millennium labeling and packaging reflecting 2500 and 1250 sheet counts for 1–ply and 2–ply rolls, respectively, constitute false advertising because the actual roll sheet counts consistently fall below 2500 and 1250. Assuming arguendo that labeling and packaging constitute advertising for Lanham Act purposes, such advertising (labeling and packaging) makes no reference to Valay. In that case, the advertising (labeling and packaging), if in fact false, would enure detriment to all competitors. SQP is no more likely to suffer harm from such advertising than would any other competitor. SQP did not adduce evidence indicating that it would suffer actual harm from any such false labeling and packaging, and therefore has not made the requisite showing for preliminary injunctive relief relating to any falsity of Millennium labeling and packaging. *See McNeilab, Inc.*, 848 F.2d at 38 (specific, non-speculative injury and causation required where advertising makes no comparison to a competing brand).

## C. Attorneys Fees and Costs

A prevailing party in an unfair competition action may be entitled to an award of attorney's fees upon a clear and convincing showing of exceptional circumstances. *See* 15 U.S.C. § 1117(a). In light of the foregoing determination that SQP is not entitled to preliminary injunctive relief, SQP's request for attorneys fees and costs must be denied.

## IV. CONCLUSION

SQP has not established a likelihood of success on the merits of its false advertising claim. Thus, preliminary injunctive relief is not warranted.

Accordingly, it is

ORDERED that

1. SQP's application for a preliminary injunction and an award of attorney's fees and costs is DENIED; and

2. The Temporary Restraining Order issued on November 22, 2000, is VACATED.

IT IS SO ORDERED.