**JOHNSON & JOHNSON–MERCK CONSUMER PHARMACEU-TICALS CO., Plaintiff,**

v.

**THE PROCTER & GAMBLE COMPANY, Defendant.**

**No. 03 Civ.7042(JES).**

United States District Court, S.D. New York.

Sept. 25, 2003.

ing a different life insurance plan, *see* Deposition of Todd Silver, Def.'s Ex. JJ, at 44–50,

supports a contrary inference.

Patterson, Belknap, Webb & Tyler LLP, New York, NY (Steven A. Zalesin, of counsel), for plaintiff.

Jones, Day, Reavis & Pogue, New York, NY (Theresa M. Gillis, Richard I. Werder, Jr., of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Johnson & Johnson–Merck Consumer Pharmaceuticals Co. ("J & J–Merck" or "plaintiff") seeks to enjoin defendant The Procter & Gamble Company ("P & G" or "defendant") from continuing to disseminate certain advertisements and promotional materials for P & G's new product Prilosec OTC on the grounds that such advertisements violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Following a hearing held on September 15 and 16, 2003, the Court received post-hearing briefs from both parties and heard oral argument on September 19, 2003. By Order dated September 19, 2003, the Court granted plaintiff's motion for a preliminary injunction. The Court's findings of fact and conclusions of law are set forth below.

## DISCUSSION

It is well established in this Circuit that a party seeking a preliminary injunction must establish (1) that it is likely to suffer irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in its favor. *See Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir.1992); *Procter & Gamble Co. v. Chesebrough–Pond's Inc.*, 747 F.2d 114, 120 (2d Cir.1984). To prevail on a false

advertising claim, plaintiff must establish that defendant's advertisements are either (1) literally false or (2) although literally true, likely to deceive or confuse consumers. *See Johnson & Johnson–Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992). Although an advertisement may be literally true, a Court may deem it false by necessary implication if it is susceptible to no more than one interpretation. *See Gillette Co. v. Wilkinson Sword Inc.*, 1989 WL 82453 (S.D.N.Y. July 6, 1989); *Cuisinarts, Inc. v. Robot–Coupe Int'l Corp.*, 1982 WL 121559 at * 2 (S.D.N.Y. June 9, 1982); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943–44 (3d Cir.1993).[1]

### A. *J & J–Merck's False Advertising Claim*

 Based on the record before the Court, and having carefully considered the arguments advanced by the parties, the Court concludes that P & G's advertisements at issue in this case are literally false and certainly convey a false message by necessary implication insofar as they suggest that one pill of Prilosec OTC can provide heartburn relief for 24 hours. First, the Court finds that one pill of Prilosec OTC does not provide any actual relief for a period of up to four or five hours from the time it is ingested. Although a pill may indeed function chemically during the five hour period following ingestion, P & G's advertising falsely claims that Prilosec OTC provides actual relief for the full 24 hour period which, of course, includes the initial five hours.

P & G vigorously contends that the pharmacological studies introduced at the hearing demonstrate that one pill of Prilosec OTC may have an impact beyond the 24 hour period and, as such, when the relief provided by one pill is measured from the five hour starting point, one pill of Prilosec OTC does indeed work for 24 hours. The Court rejects this argument for the following reasons. First, the pharmacological studies on which P & G relies do not correlate the chemical functioning of the pill with any kind of actual relief experienced by its user. Thus, the Court is simply not persuaded that the pharmacological studies show that a Prilosec OTC pill provides relief for a period of 24 hours.

Furthermore, even if the Court accepted P & G's contention that the pill, *once effective*, provides 24 hour relief, which the Court does not, the claim advanced by P & G's advertising—essentially, that 24 hours heartburn relief can be achieved with one pill of Prilosec OTC—is literally false. "One pill. 24 Hours. Zero Heartburn" simply does not equal "One pill. Wait 5 hours. Only then Zero Heartburn for the next 24 hours." To that effect, the Court is persuaded by the reasoning in *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 906 F.Supp. 178 (S.D.N.Y.1995), where Judge Baer, among other claims, considered a claim by J & J–Merck that a bar chart advertisement published by SmithKline Beecham showing that the number of prescriptions written by doctors for SmithKline Beecham's product, Tagamet, exceeded that written for J & J–Merck's product, Pepcid, by over

---

**1.** In an unpublished opinion, the Second Circuit Court of Appeals has stated that it has "yet to adopt [the doctrine of necessary implication], although district courts in this Circuit apply it." *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 19 Fed.Appx. 17 (2d Cir.2001); *see also S.C. Johnson & Son. Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir.2001). While the Court certainly finds P & G's advertisements to be false by necessary implication, the Court also finds that they are literally false.

200 million. The whole truth, revealed in a footnote in small print at the bottom of the advertisement, was that the bar chart compared the number of Tagamet prescriptions written since 1977 to the number of Pepcid prescriptions written since 1986. *See id.* at 185–86. In effect, the statement made in the ad was literally true—it was undisputed that doctors had recommended Tagamet more times than they had recommended Pepcid. On the other hand, the message conveyed in the bar chart that doctors preferred Tagamet over Pepcid and had done so in a head to head comparison with these two products was false in light of the fact that more doctors had recommended Tagamet with their prescription pads only because Tagamet had been on the market longer than Pepcid. Moreover, as Judge Baer noted, in the majority of the cases in which Tagamet was prescribed, it was prescribed for the treatment of ulcers, and not as a remedy for heartburn sufferers. *See id.* at 186.

The bottom line is that a statement, although literally true, can for all practical purposes, convey a false message. The Court finds that P & G's advertisements fit well within that definition and well within the category of falsity by necessary implication or, under the common law phraseology, of a half-truth. The Court further finds that the message created by P & G's advertisements is that a person taking Prilosec OTC can obtain 24 hour heartburn relief with one pill.

The Court's conclusion that P & G's advertisements for Prilosec OTC are literally false is further supported by the evidence introduced at the hearing relating to the advertising campaign conducted by P & G for Prilosec in its prescription drug format. In its advertising for prescription Prilosec, P & G consistently used phrases such as "one pill a day" or "a daily dosage"—language that is conspicuously absent from P & G's current advertising for Prilosec OTC. It is significant that, despite several inquiries, the Court was never provided with a satisfactory explanation as to why the references to one pill a day or a daily dosage were not included in P & G's present advertising the same way they were included in its advertising for prescription Prilosec. Indeed, the Court concludes that a manufacturer selling a drug over the counter ought to be more punctilious and more careful in conveying a false message than a manufacturer selling a drug which is prescribed only under the care of a doctor. *See SmithKline Beecham Consumer Healthcare,* 906 F.Supp. at 180 (citing *American Home Prods. Corp. v. Johnson & Johnson,* 654 F.Supp. 568, 590 (S.D.N.Y.1987)).

The Court also notes that, in some of its advertisements, P & G makes a side by side comparison between Prilosec OTC and Pepcid, *see, e.g.,* Plaintiff's Exhibit ("Pl.Exh.") 88, Prilosec OTC Works Differently From Other OTC Medicines, thus creating the impression that these two products are competitive in the same market, to wit, the market for relief from heartburn on a more or less similar basis. Nevertheless, the record in this case (including the testimony of P & G's own witnesses) makes clear that Prilosec OTC and Pepcid work very differently. Prilosec is a slow acting drug. Pepcid, which is among the drugs to which P & G compares Prilosec OTC, is a quicker acting drug designed to provide episodic relief. It is very clear from the history of this case, the nature of the drugs, and the reports issued by the Food and Drug Administration (the "FDA") introduced at the hearing in connection therewith, that Prilosec OTC is not that kind of a drug. *See* Pl. Exh. 2, May 23, 2002 FDA Memorandum; Defendant's Exhibit W, November 27, 2000 Letter from FDA to P & G (declining to approve

P & G's drug application). This fact further supports the conclusion that P & G's claim that Prilosec OTC provides 24 hour relief with one pill is false.[2]

With respect to the disclaimer which advises consumers to "use as directed for 14 days," the Court finds it insufficient to dispel the false message contained in P & G's advertisements. *See JR Tobacco of America, Inc. v. Davidoff of Geneva (CT), Inc.,* 957 F.Supp. 426, 437 (S.D.N.Y.1997). As the Court has noted several times in the course of this proceeding, P & G, motivated by its desire to secure a competitive advantage, has deliberately walked close to the line with its Prilosec OTC advertising campaign. While such conduct is not necessarily blameworthy, once the line is crossed, as it was in this case, P & G must bear the consequences of its actions.

Had the advertisements been differently worded, as J & J–Merck suggested in its summary chart, *see* Pl. Exh. 82, Sample Claims for Prilosec OTC, or even by the simple addition of "one pill *per day* provides relief for 24 hours," this case would be very different. P & G chose its language and now must live with the consequences. In sum, for the aforementioned reasons the Court finds as a matter of fact that P & G's advertising is literally false and false by necessary implication as well.[3]

**B. *Irreparable Injury***

■ The Court finds that J & J–Merck has satisfied its burden of demonstrating that its injury is irreparable, first, because some of the advertisements contain side by side comparisons between Prilosec OTC and Pepcid, as well as other heartburn medications. *See, e.g.,* Pl. Exh. 88, Prilosec OTC Works Differently From Other OTC Medicines. Such false comparison ads give rise to a presumption of irreparable injury. *See McNeilab, Inc. v. American Home Prods. Corp.,* 848 F.2d 34, 38 (2d Cir.1988). This alone takes this case well outside the logic of *SQP, Inc. v. Sirrom Sales, Inc.,* 130 F.Supp.2d 364 (N.D.N.Y.2001), a case relied on by P & G, in which no such side by side comparison was made on the labels in which the false statements were allegedly made.

Additionally, it is very clear to the Court that there is irreparable injury in this case stemming from the very nature of the advertising campaign involved. P & G's false advertising is occurring at the inception of a new product launch, a time when the buying public is particularly attentive and educable. Correcting the false impressions made on consumers will therefore be difficult. Furthermore, P & G's false advertising, by proclaiming a mes-

---

**2.** The Court finds it significant that the 24 hour claim made by P & G to the FDA was rejected as misleading. *See* Pl. Exh. 3, FDA OTC Medical Officer's Review, at 45. As a result, P & G was required to change *its* originally proposed label for Prilosec OTC. In addition, P & G included on the label language informing consumers that Prilosec OTC may take one to four days to become effective. *See* Pl. Exh. 5, Prilosec OTC Label.

**3.** Since the Court has found the advertisements in this case to be literally false, it need not reach the issue as to whether they are also misleading to the reasonable consumer, in which case survey proof would be necessary.

That issue can and will be addressed by the Court later if and when there is a trial on an issue of a permanent injunction and after the benefit of full discovery. *See Avis Rent A Car System, Inc. v. Hertz Corp.,* 782 F.2d 381, 386 (2d Cir.1986). The Court parenthetically notes that this case was brought on very short notice. There obviously has been no opportunity for either side to have much discovery or to present survey proof. Accordingly, any fact findings made in connection with a preliminary injunction application are tentative in nature and subject to change if and when the record is supplemented during a trial for permanent injunctive relief.

sage similar to the Pepcid tag line "just one and heartburn's done" will likely result in actual and imminent loss to J & J–Merck of not only sales but goodwill and market share—losses that cannot be precisely quantified or repaired at a later date.

Finally, a statement made by P & G's CEO Alan G. Lafley, suggesting that, to P & G, an advantage in the market is worth a loss in the courtroom, further supports a finding of irreparable injury. *See* Pl. Exh. 45, Sarah Ellison, *In Lean Times, Big Companies Make a Grab for Market Share*, WALL ST. J. Sept. 5, 2003. The particular case to which Lafley referred involved a $14 million false advertising claim against P & G. In the end, P & G paid only $3 million in damages and received a tremendous market advantage from its false ads. This indicates to the Court that monetary damages in this case might not adequately compensate J & J–Merck for injuries suffered as a result of P & G's false advertising.

### C. *Balance of Hardships*

█ The Court finds that J & J–Merck has demonstrated, at a minimum, that there are substantial questions going to the merits of its claim and, additionally, it may well have demonstrated a likelihood of success on the merits. As for the balance of hardships, there is evidence to support J & J–Merck's claim that it will suffer (indeed, probably already has suffered) damage in the marketplace as a result of P & G's false advertising.[4] The Court sees no real hardship to P & G resulting from the issuance of an injunction in this case, especially since P & G is free to correct its false advertising in a relatively inexpensive way, should it choose to do so at the

present time rather than waiting for the outcome of an appeal. As such, the Court finds that the balance of hardships in this case tips decidedly in favor of J & J–Merck. Indeed, there has been virtually no showing of any hardship to P & G except the loss of money invested in an advertising campaign that it probably should not have engaged in to begin with. The fact that P & G expended a large sum of money on its false advertising is, of course, no basis for concluding that the balance of hardship tips in its favor.

### CONCLUSION

The Court concludes that, given the facts of this case, the requirements for the issuance of a preliminary injunction are satisfied. The Court adopts the fact findings set forth in plaintiff's post-hearing brief only to the extent that they are undisputed and to the extent that they are clearly supported by the exhibits admitted into evidence.

It is **SO ORDERED**.

---

4. The Court notes that in the course of the hearing no marketing expert testimony was

presented from P & G on this issue.